IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Salah El-Bash,                              :
                                            :     Case No. 1:24-cv-094
        Plaintiff,                          :
                                            :     Judge Susan J. Dlott
                v.                          :
                                            :     Order Granting in Part and Denying in
Southern Ohio Medical Center Medical        :     Part Motion for Summary Judgment
Care Foundation, Inc.,                      :
                                            :
        Defendant.                          :


This matter is before the Court on Defendant's Motion for Summary Judgment.  (Doc.

42.)  Plaintiff Salah El-Bash sued his former employer, Defendant Southern Ohio Medical

Center Medical Care Foundation, Inc. ("SOMC"), for violating his rights under the Family and

Medical Leave Act, 29 U.S.C. § 2615.  SOMC moved for summary judgment on the grounds

that it granted Dr. El-Bash the FMLA leave he requested and fired him for non-retaliatory

reasons.  For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART**

the Motion for Summary Judgment.

## B.    BACKGROUND

Dr. El-Bash was first employed by SOMC from August 2014 to June 2016 as an

interventional cardiologist.  (Doc. 42-1 at PageID 1304.)[1]  He resigned from SOMC to work with

his brother.  (*Id.* at PageID 1305.)  SOMC rehired Dr. El-Bash as an interventional cardiologist

in July 2021 and set the terms and conditions for his employment in an employment contract.

(*Id.*)  Per the contract, Dr. El-Bash's salary was tied to a measurement of the amount of revenue

that he generated for the hospital called Relative Value Unit ("RVU").  (Noel Dec., Doc. 28 at

---

[1]  Citations are made to Defendant's Statement of Proposed Undisputed Facts only when the specific facts were
admitted by Dr. El-Bash.  (Doc. 42-1, Doc. 47-1.)

PageID 775.)  His first-year salary after his rehiring was $712,745 based on a RVU production at the 75th percentile.  (Doc. 42-1 at PageID 1305.)  Dr. El-Bash understood that RVUs were a metric to determine his future compensation, but he denied that he was told that RVUs were a measure of performance.  (El-Bash Dec., Doc. 45 at PageID 1430.)  His pro-rated RVU production was at the 21st percentile during the first five months of his second tenure at SOMC.  (Doc. 42-1 at PageID 1305.)  SOMC expected that a "typically-productive" cardiologist would reach the 75th percentile within six months of employment.  (Stewart Dep., Doc. 25 at PageID 580.)

Dr. Jay Hamze was the head of the cardiology department at SOMC, which included another interventional cardiologist and two non-invasive cardiologists.  (Doc. 42-1 at PageID 1305–1306.)  SOMC employed a staff to assist the cardiologists with their cardiology practice.  (*Id.*)  Sara Grant was the office manager for the SOMC Heart and Vascular Associates, and she and her staff scheduled patients for the cardiologists.  (*Id.*)  Amy Fraulini was SOMC's Director of Critical Care and Heart & Vascular Services.  (*Id.* at 1307.)  Fraulini and Grant, along with Brady Carter, served as administrative partners assisting Dr. El-Bash with his practice.  Dr. El-Bash stated that the administrative partners "routinely directed [his]work, discussed [his] performance, and provided instruction" to him.  (El-Bash Dec., Doc. 45 at PageID 1431.)  When administrative partners received information that a physician was not meeting SOMC's expectations, they reported it to Dr. Kendall Stewart, the Chief Medical Officer at SOMC.  (Doc. 42-1 at PageID 1307.)  Dr. Stewart met with the physician about SOMC's expectations and to provide guidance.  (*Id.*)

On September 19, 2021, Dr. El-Bash called Grant to give her last-minute notice that he was taking four days off starting September 20, 2021.  (*Id.*)  Grant was disturbed and advised Dr.

El-Bash that he needed to demonstrate willingness to meet SOMC's expectations.  (*Id.*)  On

September 28, 2021, Dr. Stewart, Dr. Hamze, and Grant met with Dr. El-Bash to provide him

with a Behavior Expectation Tool ("BET") to specify the ways in which he was not meeting

expectations, including by failing to follow the SOMC Code of Conduct, failing to read and

provide sufficient responses to emails, failing to document notes and to enter appropriate orders,

and a disinterest in his work.  (Doc. 27-1 at PageID 720–722.)  The BET letter, signed by Dr.

Stewart, stated that it constituted a final written warning to Dr. El-Bash:

> Your administrative partners will monitor your behavior and document your
> noncompliance with our expectations.  If you choose to continue behaving
> disruptively, we will take the appropriate administrative action up to and
> including removing you from the SOMC Physician Team.
>
> This document is your final written warning.

(*Id.* at PageID 722.)  Dr. Stewart told Dr. El-Bash that he needed to "permanently end his

disruptive behavior."  (Doc. 42-1 at PageID 1308.)

Dr. El-Bash disagreed that that he had failed to meet some of the expectations listed the

in the BET.  (El Bash Dec., Doc. 45 at PageID 1430.)  Nonethless, he took Fraulini's advice to

accept responsibility rather than challenge the BET.  (*Id.*)  He was asked to submit, and did

submit, a written plan of action to start meeting expectations.  (Doc. 42-1 at PageID 1308; Doc.

27-1 at PageID 719.)  He stated in his plan of action email that he had "nobody to blame for my

irresponsible pattern of behavior" but himself.  (Doc. 27-1 at PageID 719.)

Fraulini testified at her deposition that Dr. El-Bash's performance improved for a month

or so after he received the BET.  (Doc. 24 at PageID 425–426.)  However, as later documented

by SOMC, Dr. El-Bash "failed to follow-through with timely and/or accurate documentation" for

billing concerns twice on October 4, 2021 and again on December 8, 15, 21, and 24, 2021.  (Doc.

28-3 at PageID 806.)  He also took time off without providing accurate notice to Grant which

required the last-minute cancellation of patient appointments on October 1, 21–22, and 28–29, 2021; November 10–12, 2021; and December 2–3 and 15–16, 2021. (Grant Dec., Doc. 30 at PageID 872–873.) His stated reasons for the absences included personal reasons for five days, transportation issue on two days, and being sick on four days, including December 15–16, 2021. (*Id.*) Dr. El-Bash stated that his administrative partners—Fraulini, Grant, and Carter—did not help him make improvements in his performance as they were supposed to do. (El-Bash Dec., Doc. 45 at PageID 1430.)

On or around December 16 or 17, Dr. El-Bash told Grant and Fraulini that his mother, who lived in Texas, had a brain tumor. (Doc. 42-1 at PageID 1309.) Fraulini suggested that Dr. El-Bash take FMLA leave. (*Id.*) Dr. El-Bash booked a flight to Texas that day for Monday, December 20, 2021. (Doc. 23-7.)

In the morning of December 17, 2021, the three administrative partners met and discussed Dr. El-Bash. (Fraulini Dep., Doc. 24 at PageID 475.) Fraulini "recognized at that point [they] had some major problems" concerning Dr. El-Bash. (*Id.* at PageID 476.) She determined that "he was not following through on his action plan" and had had "some major slips." (*Id.* at PageID 477.)

On the evening of December 17, 2021, Dr. El-Bash told Grant that he wanted to take FMLA leave to see his mother in Texas the following week. (Doc. 42-1 at PageID 1309.) Grant advised Dr. El-Bash to contact Employee Health to get guidance and FMLA paperwork. (*Id.*) Dr. El-Bash had to find the necessary FMLA paperwork online and print it off. (El-Bash Dec., Doc. 45 at PageID 1431.) Grant sent a text to Fraulini on the evening of December 17, 2017 advising her that Dr. El-Bash would be applying for FMLA leave. (Doc. 42-1 at PageID 1310.)

Grant knew that Dr. El-Bash would not be at work the week of December 20, 2021, a

week he was scheduled to see patients.  (*Id.* at PageID 1309–1310.)  He had sixty patients scheduled for December 20, 2021 and December 21, 2021.  (*Id.* at PageID 1310.)  She called patients over the weekend to cancel the December 20, 2021 patients.  (*Id.*)

Dr. El-Bash stated in his Declaration that his daughter developed a severe tooth infection during the week of December 16, 2021.  (Doc. 45 at PageID 1431.)  He changed his flight to Texas from December 20, 2021 to December 22, 2021 so that he could be with his daughter for a tooth extraction procedure in Charleston, West Virginia that required her to undergo anesthesia. (*Id.*)[2]  He flew to Texas on December 22, 2021.  (*Id.* at PageID 1432.)  He returned to work at the end of December to work the multi-day on-call shift over New Year's weekend.  (*Id.*) SOMC's records show that he was off work December 20–24 and 27–30, 2021.  (Doc. 24-4 at PageID 517.)

Fraulini learned at some point before the afternoon of Tuesday, December 21, 2021 that Dr. El-Bash had not yet gone to Texas.  She sent Dr. El-Bash a text why he "took time off this week if [he was] home."  (Doc. 29-4 at PageID 867.)  Dr. El-Bash responded as follows in a string of messages:

> Oh wow
>
> I'm not home
>
> You don't know why I took off amy?
>
> Really

---

[2] There is confusion in the record about the date of Dr. El-Bash's daughter's medical procedure in Charleston, West Virginia.  Dr. El-Bash erroneously testified at his deposition that he assumed he flew to Texas on December 20, 2021 using the Delta ticket.  (Doc. 23 at PageID 159.)  The parties agree now that his testimony was incorrect.  His credit card and mobile phone records indicate that he was near Charleston, West Virginia on December 20, 2021, likely for the surgery.  (Doc. 38-1 at PageID 942, 944; Doc. 43-11 at PageID 1395, 1400, 1412.)  Nonetheless, Dr. El-Bash stated in his Declaration that the procedure was on December 21, 2021.  (Doc. 45 at PageID 1431–1432.) That statement is not supported by his credit card or mobile phone records.  (Doc. 38-1 at PageID 942, 944–945; Doc. 43-11 at PageID 1396, 1400, 1412.)  However, it is not material to SOMC's claims or to Dr. El-Bash's defense whether the surgery was on December 20 or 21, 2021.

> I'm really upset no
>
> I took off because my mom has a tumor in her brain
>
> And I want to be with her
>
> I'll call when I can.

(*Id.*)  He did not mention at that time that his daughter underwent a dental procedure in West Virginia.  Fraulini called Dr. El-Bash that evening.  Dr. El-Bash acknowledged that he had not left for Texas, and he told her that he stayed behind to attend the dental procedure with his daughter.  (Doc. 42-1 at PageID 1310–1311; Fraulini Dec., Doc. 29 at PageID 857.)  Fraulini expressed concerns to Dr. El-Bash about his absence from work and about unrelated deficiencies in his work performance at SOMC.  (*Id.*; Doc. 29-5 at PageID 868–869.)  She sent an email the next day to Dr. El-Bash, and copied to Dr. Stewart, Grant, and other SOMC management, summarizing their conversation, including the fact that Dr. El-Bash still was in Ohio when they talked.  (Doc. 29-5 at PageID 868–869.)

 Brady Carter, Grant's supervisor and an administrative partner, sent an email to Dr. Stewart on December 23, 2021 expressing his opinion that Dr. El-Bash was not meeting SOMC's expectations and gathering documentation to support that position.  (Doc. 31-3 at PageID 890–891.)  Dr. Stewart asked for feedback from Dr. Hamze and the administrative partners about whether Dr. El-Bash was meeting expectations.  (Doc. 42-1 at PageID 1311.)  He sent an email to Vicki Noel, the Vice President of Human Resources, stating that Dr. El-Bash's "ongoing refusal to meet the expectations he has agreed to appears . . . to warrant giving him notice or accepting his resignation" and asking her recommendation.  (Doc. 27-3 at PageID 732.)

Noel used a template to evaluate and document whether Dr. El-Bash had met SOMC's strategic values of safety, quality, service, teamwork, and finance.  (Doc. 42-1 at PageID 1312; Doc. 26-4 at PageID 708–709.)  She did not note any deficiencies by Dr. El-Bash related to the

values of safety, quality, or service.  (Doc. 26-4 at PageID 708.)  She did note deficiencies

related to teamwork and finance:

| | | |
|---|---|---|
| **Teamwork** | Physician has pattern of entitled and disrespectful behavior in the workplace. | Provider fails to communicate respectfully and timely to administrative and clinical colleagues as evidenced by the following examples:<br>9/7/21 – Does not respond or respond professionally to reminders/non-compliant tasks<br>9/21/21 – Failed to coordinate coverage<br>12/22/21 (A and B) – Consistently fails to communicate time off requests which negatively impacts his patients, colleagues, and office team. |
| | Physician has a significantly lower Respectful Team Player survey results than the MCF average and those in his specialty. | Respectful Team Player results: 2021 – 12th percentile |
| | Physician repeatedly fails to meet requirements and expectations. | 9/10/21 – Failed to meet SOMC annual requirements<br>9/28/21 – Clarified expectations and Final Warning<br>12/22/21 – Summary of continued failed expectations |

| | | |
|---|---|---|
| | Physician's wRVU Productivity is significantly less than his colleagues in Interventional Cardiology. (Note: physician's wRVU productivity has been adjusted for any leave of absences before percentile calculation) | Annual wRVU productivity:<br>FY22 YTD – 10th percentile (from 7/1/21 through 12/3/21) |
| **Finance** | | Failed to follow-through with timely and/or accurate documentation as evidenced by the following incidences:<br>9/1/21<br>9/7/21<br>9/10/21<br>9/13/21<br>9/14/21 |
| | Physician's has a pattern of | |

| | inconsistent documentation completion which delays follow-up and accurate billing. | 9/14/21 <br> 9/17/21 <br><br> 9/17/21 <br> 9/20/21 <br> 10/4/21 <br> 10/4/21 <br> 12/8/21 <br> 12/15/21 <br> 12/21/21 <br> 12/24/21 |
|---|---|---|

(*Id.* at 708–709.)

She sent the report regarding her review of Dr. El-Bash's performance in terms of SOMC's strategic values to the Executive Committee on Tuesday, December 28, 2021. (Doc. 42-1 at PageID 1312.) The Executive Committee decided to terminate Dr. El-Bash's contract or ask him to resign based on the alleged performance deficiencies outlined in the Noel report. (*Id.*; Noel Dep., Doc. 26 at PageID 673.) The Executive Committee did not discuss or consider Dr. El-Bash's exercise of FMLA rights to visit his mother in Texas due to her brain tumor. (Noel Dec., Doc. 28 at PageID 778.)

On Monday, January 3, 2022, after Dr. El-Bash covered the New Year's weekend call shifts, Noel and Dr. Stewart met with Dr. El-Bash and offered him the opportunity to resign or have his SOMC contract terminated. (Doc. 42-1 at PageID 1313.) Dr. El-Bash did not resign, so SOMC terminated his contract pursuant to the 90-day notice provision. (*Id.*; Noel Dec., Doc. 28 at PageID 778.) That same day, Dr. El-Bash received the paperwork he needed from his mother's physician in Texas to request intermittent FMLA leave from his employment at SOMC to assist his mother after her expected surgery. (Doc. 23-6 at PageID 294–297.) He never turned in the FMLA request to SOMC because he had been terminated. (El-Bash Dep., Doc. 23 at PageID 224.)

8

**B.     Procedural Posture**

Dr. El-Bash filed this suit against SOMC on August 16, 2023 in the Eastern Division of the Southern District of Ohio in Columbus.  (Doc. 1.)  He asserted claims for FMLA interference and FMLA retaliation.  (*Id.* at PageID 3–5.)  On February 26, 2024, the Magistrate Judge transferred the case to the Western Division of the Southern District of Ohio at Cincinnati.

SOMC filed the pending Motion for Summary Judgment following a full period of discovery.  (Doc. 42.)  Dr. El-Bash filed a Response in Opposition, to which SOMC filed a Reply.  (Docs. 47, 52.)[3]

**II.     SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant has the burden to show that no genuine issues of material fact are in dispute.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).  The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to

---

[3]   Also pending is SOMC's Motion for Sanctions against Dr. El-Bash for alleged discovery abuses.  (Doc. 44.)  The Court will resolve the Motion for Sanctions in a separate Order.

determine whether there is a genuine issue for trial." *Id.* at 249.  "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

## III.    ANALYSIS

Dr. El-Bash asserted separate claims for FMLA interference and FMLA retaliation in the Complaint, and SOMC moves for summary judgment on both claims.  The Sixth Circuit calls FMLA interference and retaliation "discrete theories of recovery."  *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).  The Court will begin by examining Dr. El-Bash's FMLA interference claim and then turn to his retaliation claim.

## A.    FMLA Interference

Pursuant to the FMLA interference clause, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the rights provided by the FMLA.  29 U.S.C. § 2615(a)(1).  "The interference theory has its roots in the FMLA's creation of substantive rights, and '[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred,' regardless of the

intent of the employer." *Seeger*, 681 F.3d at 282 (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)).  The employer's intent is not relevant to an interference claim. *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 351–352 (6th Cir. 2013).  Nonetheless, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Mullendore v. City of Belding*, 872 F.3d 322, 327–328 (6th Cir. 2017) (citation omitted).

To establish a prima facie case of FMLA interference, a plaintiff must prove that (1) he was an eligible employee, (2) the employer was a covered employer, (3) he was entitled to FMLA leave, (4) he gave notice to his employer of his intent to take leave, and (5) the employer denied him FMLA benefits or interfered with his FMLA rights.  *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).  An interference claim can be based both on the denial of leave and the denial to the right of reinstatement following a leave.  *Id.* at 244.  Dr. El-Bash asserts that SOMC interfered with his FMLA rights by denying him the right to take intermittent FMLA leave, by denying him reinstatement following the initial FMLA leave, and by taking his FMLA leave into consideration when he was terminated.

### 1.    Denial of Intermittent FMLA Leave

Dr. El-Bash contends that he was denied the intermittent FMLA leave that he would have taken in 2022 to care for his mother had he not been terminated.  SOMC moves for summary judgment because Dr. El-Bash never requested intermittent leave.  His mother's Texas doctor completed and signed an FMLA request for intermittent leave on January 3, 2022 stating that Dr. El-Bash likely would need to assist his mother with daily care, medical care, and transportation issues for six months to one year.  (Doc. 23-6 at PageID 294–297.)  However, Dr. El-Bash

admitted that he never turned in the FMLA request to SOMC because SOMC gave him the

notice of termination on January 3, 2022.  (El-Bash Dep., Doc. 23 at PageID 224.)  There is no

evidence that SOMC knew Dr. El-Bash would request additional intermittent leave after he

returned from his initial FMLA leave in December 2021.  The lack of notice is fatal to this

subclaim.  *See Hoge*, 384 F.3d at 244 (stating notice element).

### 2.    Denial of Reinstatement

Dr. El-Bash contends in this subclaim that he was denied reinstatement to his position

after his initial leave to travel to Texas to see his mother in December 2021.  SOMC argues that

it is entitled to summary judgment because Dr. El-Bash did return to his position.  The Court

agrees.  It is undisputed that Dr. El-Bash's leave ended on January 30, 2021, and he covered the

New Year's weekend call shifts at SOMC.  (Doc. 24-4 at PageID 517; Doc. 45 at PageID 1432.)

Noel and Dr. Stewart then met with him on January 3, 2023 and gave him a ninety-day notice of

termination of his employment contact.  (Noel Dec., Doc. 28 at PageID 778; Doc. 28-1 at

PageID 785.)  The termination was not effective until April 4, 2022.  (Noel Dec., Doc. 28 at

PageID 778.)  Accordingly, SOMC is entitled to summary judgment on this subclaim because no

reasonable juror could find that it interfered with Dr. El-Bash's ability to return to work after the

late December 2021 leave of absence.[4]

### 3.    Consideration of FMLA Leave as Negative Factor in Employment Decision

Dr. El-Bash asserts in this subclaim that SOMC interfered with his FMLA rights by

taking his FMLA leave into consideration when it determined to terminate his employment

contract.  In essence, Dr. El-Bash is asserting a retaliation claim disguised as an interference

---

[4]  Dr. El-Bash's reliance on *Wheeler v. Knox Cnty., Tenn.*, No. 3:16-cv-108, 2018 WL 4685454 (E.D. Tenn. Sept. 29, 2018), is misplaced.  The court there held that an employee made a prima facie case of FMLA interference because he was denied the right to return to work at an equivalent position with equivalent terms, condition, and benefits of employment.  *Id.* at *12.  Dr. El-Bash has not established the same.

claim. The Sixth Circuit has held that the essence of a plaintiff's claim is retaliation if the employer had granted the plaintiff all the FMLA leave which he sought before terminating his employment. *Seeger*, 681 F.3d at 282–283. That is the case here because Dr. El-Bash received the only leave which he requested from SOMC. The Court will dismiss this subclaim.

**B.      FMLA Retaliation**

In his second claim, Dr. El-Bash alleges that SOMC terminated his employment in retaliation for taking FMLA leave in December 2021. "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). District courts employ the *McDonnell Douglas* burden-shifting framework to a plaintiff's FMLA retaliation claim. *Stein v. Atlas Ind., Inc.*, 730 F. App'x 313, 318 (6th Cir. 2018). A plaintiff must prove four elements to establish a prima facie case: (1) he was engaged in a statutorily protected activity; (2) his employer knew that he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger*, 681 F.3d at 283. The only disputed factor here is the causal connection.

There is a very close temporal proximity of only a few days between Dr. El-Bash's use of FMLA leave and the date SOMC gave him notice of termination. The parties dispute, however, whether temporal proximity alone is sufficient to prove causation. In a recent Title VII case, the Sixth Circuit held that a temporal proximity of six days was sufficient to establish causation at the prima facie stage. *Moore v. Coca-Cola Bottling Co.*, 113 F.4th 608, 627 (2024). Four years earlier, the Sixth Circuit stated in a different Title VII case that "[t]emporal proximity alone generally is not sufficient to establish causation," but it acknowledged that "rare" exceptions can

exist.  *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citation omitted).  That

same year, the Sixth Circuit suggested that temporal proximity is enough when the adverse

decision follows within days or weeks of the protected conduct.  *George v. Youngstown State*

*Univ.*, 966 F.3d 446, 460 (6th Cir. 2020).  The facts here qualify as one of the perhaps unusual

cases where temporal proximity is enough to establish causation at the prima facie stage.  The

SOMC Executive Committee made the decision to terminate Dr. El-Bash when he was still on

leave, and it gave him notice of termination less than a week after he returned to work.  (Doc. 42-

1 at PageID 1312.)  The Court finds that Dr. El-Bash has made a prima facie case of retaliation.

SOMC proffers legitimate, non-discriminatory reasons for terminating Dr. El-Bash's

employment.  SOMC asserts that the Executive Committee based the termination decision on the

summary of Dr. El-Bash's alleged deficiencies related to the strategic values of teamwork and

finance stated in Noel's December 28, 2021 report.  (Doc. 26-4 at PageID 708–709; Doc. 42-1 at

PageID 1312.)  Therefore, the Court will turn its attention to whether Dr. El-Bash can establish

pretext.  "A plaintiff may establish pretext by showing that the employer's proffered reasons (1)

have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant

the action."  *Seeger*, 681 F.3d at 285.

Dr. El-Bash argues that the reasons stated in the Noel report did not motivate the adverse

action or were insufficient to motive the adverse action.  As stated above, SOMC made the

decision to terminate Dr. El-Bash's employment when he was on FMLA leave, and SOMC gave

him notice of the decision mere days after he returned to work.  (Doc. 42-1 at PageID 1312–

1313.)  This is evidence of pretext, but it insufficient by itself to establish pretext.  *Clemons v.*

*Hillshire Brands Co.*, No. 23-5622, 2024 WL 3355379, at *3 (6th Cir. Apr. 11, 2024)

("[T]emporal proximity cannot be the sole basis for finding pretext.") (quoting *Seeger*, 681 F.3d

at 285).

In a related but distinct argument, Dr. El-Bash points out that SOMC took no action in October or in early December 2021 when he allegedly failed to complete necessary billing paperwork.  He asserts that these alleged deficiencies related to billing documentation were not deemed serious enough when they occurred to warrant any action, even though he already had received a final written warning in September 2021.  (Doc. 27-1 at PageID 720–722.)  Indeed, Fraulini testified that Dr. El-Bash's performance had improved in October.  (Doc. 24 at PageID 425–426.)  The SOMC decisionmakers did not begin to discuss or document the reasons for his termination until late December 2021 after he requested and took FMLA leave.  The three administrative partners discussed his alleged deficiencies on December 17, 2021 after he had asked for FMLA leave the following week.  (Fraulini Dep., Doc. 24 at PageID 475–477.)  Then SOMC began the process of documenting the deficiencies and bringing them to the Executive Committee when Dr. El-Bash was on FMLA leave.  (Doc. 26-4 at PageID 708–709; Doc. 27-3 at PageID 732; Doc. 31-3 at PageID 890–891; Doc. 42-1 at PageID 1311–1312.)  The fact that SOMC management seemed unconcerned about certain earlier performance deficiencies until he asked for FMLA leave also can be proof of pretext.  *See DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 394 (6th Cir. 2005) (stating the timing of events relied upon by the employer for an adverse employment action can be a basis for finding pretext separate from the timing of the adverse action itself).

Dr. El-Bash also asserts that Noel's December 28, 2021 report, which was relied upon by the Executive Committee in deciding to terminate him, contains indications of pretext.  Noel listed in the report several alleged incidents demonstrating Dr. El-Bash's deficiency in the SOMC strategic values of teamwork and finance that occurred in early September 2021 before

he received the written final warning on September 28, 2021.  (Doc. 26-4 at PageID 709.)  He contends that is unfair and insufficient to hold the same incidents against him to justify both the written final warning and the subsequent notice of termination.  Finally, Dr. El-Bash contends that Noel improperly cited his lower-than-expected RVU numbers as a basis for terminating his employment in the report.  (*Id.* at PageID 708–709.)  Dr. El-Bash believed that RVU numbers were only to be used as a basis for setting his salary under his employment contract.  (El-Bash Dec., Doc. 45 at PageID 1430.)  He also points out that Dr. Stewart testified that it took a typical doctor six months of employment to reach the expected RVU number, but he was given only five months of employment to meet that expectation.  (Stewart Dep., Doc. 25 at PageID 580.)

SOMC offers explanations and evidence to try to rebut this pretext showing.  The Court need not review its rebuttal in detail because in the end SOMC creates only a genuine dispute of fact as to whether its stated reasons for terminating Dr. El-Bash were a pretext for FMLA retaliation.  The Court will deny summary judgment to SOMC on the FMLA retaliation claim.

## IV.     CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED IN PART AND DENIED IN PART**.  Summary judgment is granted to SOMC on the FMLA interference claim, but summary judgment is denied to SOMC on the FMLA retaliation claim.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge

16